UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
WASHINGTON D.C.

UNITED STATES OF AMERICA

v.   CASE NO. 1:21-cr-00328-TSC

ROBERT SCOTT PALMER
_____/

### SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Defendant Robert Palmer, by and through undersigned counsel, pursuant to 18 U.S.C. §§ 3553 and 3661 and Rule 32(i) of the Federal Rules of Criminal Procedure, hereby moves this Honorable Court to vary downward from the applicable advisory Sentencing Guidelines range and, in addition, presents the following relevant information for the Court to consider in determining a reasonable sentence to impose in this case:

### Facts and Sentencing Considerations

Mr. Palmer pled guilty pursuant to plea agreement to one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon in violation of 18 USC §§ 111(a) and (b). The charged dangerous weapon was a fire extinguisher that Mr. Palmer retrieved while at the Capitol and threw at officers. Mr. Palmer, a father of four and successful businessman, recognizes that his actions were inexcusable and completely out of character for him. As set forth below, Mr. Palmer

committed his offense while swept up in the furor of the crowd of protestors at the Capitol. As soon as he learned that he was under investigation, with assistance of undersigned counsel, he surrendered to law enforcement and admitted his role in the offense. He entered a guilty plea, being one of the first defendants to do so as it relates to 18 USC 111(b).

Mr. Palmer's advisory Guidelines range, as calculated by Probation, falls at total offense level 26 and criminal history category I. At that range, the Guidelines suggest a sentence of 63 to 78 months. That proposed Guidelines calculation, however, omits a downward adjustment for acceptance of responsibility. As set forth below, Mr. Palmer has accepted responsibility for his offense and should correspondingly receive at least a two-level downward adjustment. With that two-level adjustment, the advisory Guidelines range would then be 51 to 63 months. Regardless of the final guideline range, Mr. Palmer respectfully propose that a downward variance to a sentence of 24 months imprisonment would be a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### I. Mr. Palmer has Accepted Responsibility for his Actions and his Offense and Should Correspondingly Review a Downward Adjustment for Acceptance of Responsibility

The Guidelines provide for a two-level downward adjustment of the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his

offense." U.S.S.G. § 3E1.1(a). The Application Notes to section 3E1.1 further direct:

> 1. In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
>
> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;
> (B) voluntary termination or withdrawal from criminal conduct or associations;
> (C) voluntary payment of restitution prior to adjudication of guilt;
> (D) voluntary surrender to authorities promptly after commission of the offense;
> (E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
> (F) voluntary resignation from the office or position held during the commission of the offense;
> (G) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and
> (H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1, cmt. n.1.

The Application Notes then go on to provide that "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct

comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility…" U.S.S.G. § 3E1.1, cmt. n.3.  To be sure, the Notes further state that "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."  As an example of conduct indicating a lack of acceptance of responsibility, Application Note 4 states that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, cmt. n.4.  The Notes later add that "[t]he timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific." U.S.S.G. § 3E1.1, cmt. n.6.

A consideration of the factors set forth in the Application Notes clearly indicates that Mr. Palmer is entitled to the acceptance of responsibility adjustment.  Mr. Palmer promptly entered a guilty plea in this case, long before the vast majority of the defendants who were charged in connection with the Capitol riot.  As the Government acknowledges, Mr. Palmer was indeed one of the first defendants to plead guilty among the defendants who were charged with felony offenses.  He, likewise, promptly turned himself in to law enforcement as soon as he learned that

he was under investigation. He then immediately admitted to his role in the offense after his arrest. Likewise, at his change of plea hearing, he unequivocally admitted to the factual basis that the Government proffered. Aside from entering a guilty plea and accepting responsibility for the offense, Mr. Palmer has met with the Government in an attempt to provide assistance in an effort to atone for offense.

Unfortunately, while dealing with the stress of his incarceration (Exhibit A), Mr. Palmer made the ill-thought-out decision to post to the donation website. He did distort the timeline of the events and falsely claimed to have acted in defense during the events at issue. After realizing the idiocy of his decision, he had the website removed and refunded all of the donations he received.

Notwithstanding his foolish decision to post the donation website, Mr. Palmer continues to fully accept responsibility for his offense. Moreover, he even went beyond mere acceptance of responsibility and made sincere efforts to provide assistance to the Government. He has not gone back on his agreement to cooperate with and provide assistance to the Government. He, furthermore, has already provided counsel with the funds to pay his restitution, even after he has lost nearly all of his other assets. Mr. Palmer has clearly accepted full responsibility for his offense. To the extent any questions remains as to his acceptance of responsibility, Mr. Palmer intends to genuinely express his sincere remorse for actions at

sentencing. For those reasons, he asks that this Court apply the acceptance of responsibility adjustment to his Guidelines calculation.

## II. Overall Sentencing Considerations and the Remaining 18 U.S.C. § 3553(a) Factors

The facts and circumstances surrounding Mr. Palmer's offense, though certainly a serious one, do not call for the imposition of a sentence as high as the advisory Guidelines would suggest. The Guidelines, "as a matter of administration and to secure nationwide consistency[,]… should be the starting point and the initial benchmark," but are not the only consideration in sentencing. *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586169 L.Ed.2d 445 (2007). After properly calculating the Guidelines range, the Court must then make an individualized assessment of the case and consider each of the factors set forth in 18 U.S.C. § 3553(a) before deciding upon a sentence. *Id.* at 49-51. Those factors include:

>  (1) the nature and circumstances of the offense;
>  (2) the history and characteristics of the defendant;
>  (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
>  (4) the need to protect the public; and
>  (5) the Guidelines range, as well as
>  (6) the kinds of sentences available;
>  (7) the need to avoid sentencing disparities among similar defendants who have been found guilty; and
>  (8) the need to provide restitution to victims of the offense.

*United States v. Martin*, 455 F.3d 1227, 1236 (11th Cir. 2006) (citations omitted). A consideration of the various 3553(a) factors applicable in the instant case,

including the nature and circumstances of the offense, the defendant's history and characteristics, and the need to provide just punishment, protect the public, and avoid unjust sentencing disparities, all establish that a sentence within the applicable proposed Guidelines range would be a punishment greater than necessary to accomplish the purposes of sentencing set forth in § 3553(a).

### A. The Nature and Circumstances of the Offense and the Need to Provide Just Punishment

As Judge Mehta recently stated during sentencing in another Capitol riot case, the citizens who participated in the Capitol riot were "called to Washington, DC, by an elected official, prompted to walk to the Capitol by an elected official." *See* https://www.cnn.com/2021/11/19/politics/judge-blames-trump-riot/index.html (accessed Dec. 11, 2021); *United States v. John Lolos*, 1:21-cr-00243-APM (Sentencing held on November 19, 2021). People such as Mr. Palmer were "a pawn in the game played by people who know better." *Id.* "People like [him] were told lies, were told falsehoods, were told the election was stolen when it was not…Regrettably, people like [him] who were told those lies took it to heart. And they are the ones paying the consequences." *Id.* Judge Mehta sentenced the defendant in that case to 14 days incarceration despite having found that the defendant appeared to be attempting to justify his conduct at sentencing. *Id.*

Mr. Palmer went to the Capitol at the behest of the former president. Like many others who participated in the Capitol riot, Mr. Palmer blindly followed the many figures who falsely but persistently claimed that the election had been stolen from the president. Those voices, including the voice of the then-president himself, had convinced persons such as Mr. Palmer that the election was fraudulent and that they must take action to stop the transition of the presidency. In Mr. Palmer's warped mind, on the day in question, he was acting as a patriot and for the good of the nation. While his intent was misplaced and his actions inexcusable, he sincerely believed that he was acting as a patriot on the day in question. Unfortunately, that mindset, coupled with the crowd mob effect, saw an otherwise law-abiding and successful father and business owner assault Capitol police.

Mr. Palmer realizes in retrospect that his actions hurt the nation. At the time of his actions, he believed that he was acting in the country's best-interests. As distorted as his mindset was at that time, his heart was set on doing what he believed was right. He knows now that he was wrong. He also accepts that the election was legitimate and that he had no right to attempt to interfere with the governance of our nation. He, likewise, accepts that he will be going to prison for his actions. (Exhibit B).

While many of the people who participated in the Capitol riot will be going to prison, the architects of that horrific event will likely never be charged with any

criminal offense. That is not to say that the people who participated in the "front lines" of the riot should not be appropriately punished. In considering the facts and the circumstances of the offense, however, it is relevant to consider that the riot almost surely would not have occurred but for the financing and organization that was conducted by persons unconnected to Mr. Palmer who will likely never be held responsible for their relevant conduct.

Based on the foregoing, Mr. Palmer asks this Court to consider the unique facts and circumstance of this offense in determining a reasonable sentence pursuant to section 3553(a).

### B. Mr. Palmer's History and Characteristics and the Need to Protect the Public

As documented in the presentence report, Mr. Palmer grew up in a very unstable home and had tumultuous relationships with both of his parents. His parents split when he was very young. His mother suffered from substance abuse and adverse mental health conditions. He had very little contact with his mother from that time onward.

After his father remarried, Mr. Palmer suffered horrific abuse at the hands of his father and stepmother. That abuse continued until Mr. Palmer made the decision to leave his father's home at the age of 15. From the age of 16, Mr. Palmer essentially lived on his own and was without a stable home. During that time, he

also became a victim of sexual abuse. Without a stable parental figure, he also stopped attending school during that time.

Despite his instability, Mr. Palmer was able to join the Navy and served for two years. While he struggled with substance early on in his adult life, he was able to overcome the addiction and become a loving father and business owner. From his mid-20s until the time of the instant offense, Mr. Palmer was mostly a law abiding and productive member of society. (Exhibit C).

Mr. Palmer has, nonetheless, struggled with depression and substance abuse. While he stopped the use of harder drugs in his 20s, he continued to self-medicate with alcohol and marijuana. Stress from familial troubles and from running a business as a sole proprietor no doubt continued to impact his adverse mental health and substance abuse.

Mr. Palmer's traumatic childhood almost surely impacted his mental health and substance abuse as an adult. (Exhibit D). While his mental health and substance abuse do not excuse his actions, they do provide context. They also help explain how an otherwise successful and law-abiding citizen can become so warped as to believe that he would be justified in participating in a riot at the Capitol that threatened the foundation of our democracy. As set forth above, Mr. Palmer was exposed to a barrage of media that convinced him that the election had been "stolen" from the former president. On the day in question, the former president himself led

Mr. Palmer into that mindset. Mr. Palmer's depression and ongoing substance abuse surely contributed to his failure to then see the repugnance of the actions that were subsequently taking place at the Capitol.

While Mr. Palmer's traumatic childhood and depression and substance abuse, again, do not excuse his actions, he submits that they are relevant factors for the Court to consider under section 3553(a). After receiving much needed mental health and substance abuse treatment in the Bureau of Prisons, Mr. Palmer will be of little risk to ever re-offend, particularly given his life history. Under the circumstances, a sentence within the advisory Guidelines range would be a sentence that is far greater than necessary to fulfill the recognized purposes of sentencing.

### C. The Guidelines Calculation

Mr. Palmer chose not to proceed to trial and instead pled guilty to Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon in violation of 18 USC §§ 111(a) and (b). The dangerous weapons were the items that Mr. Palmer retrieved while at the Capitol – the fire extinguisher, wood, and pole. As a result of the charge having involved a weapon, Mr. Palmer received a four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for use of a weapon, as well as a two-level enhancement under U.S.S.G. § 2A2.2(b)(7) for being charged under 18 U.S.C. § 111(b) for use of a weapon. An assault that resulted in physical contact, but that did not involve a weapon, would trigger a Guidelines range that is six-levels lower than

the range Mr. Palmer faces. Consequently, a defendant who actually strikes an officer during an assault would face a Guidelines range that is 24 to 37 months lower than the Guidelines range Mr. Palmer is facing. Moreover, Mr. Palmer has received the same six-level enhancement that a defendant would receive for using a more customarily dangerous weapon, such as a firearm. A defendant who commits an assault on an officer with a firearm or knife would thereby face the same Guidelines range that Mr. Palmer faces. While, again, Mr. Palmer accepts responsibility for his offense and was well aware of the Guidelines range calculation when he entered his plea, he asks this Court to consider the impact of the Guidelines range that results from the unique facts of this case.

### D. The Need to Avoid Sentencing Disparities

The Supreme Court has long held that "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Gall*, 552 U.S. at 52 *quoting Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The imposition of a sentence within the advisory Guidelines range would be a sentence far greater than the sentences imposed to date on any of the defendants who have been charged with offenses arising from the Capitol riot. A comparison of Mr. Palmer's relevant conduct and life history to the

conduct and history of the other defendants who have been sentenced in connection with the Capitol riot would not justify the disparity in sentences that a within-the-Guidelines sentence would create. Given Mr. Palmer's history, his mindset at the time of the offense, his prompt acceptance of responsibility, and his efforts to provide assistance to the Government, a sentence of 18 to 24 months incarceration would be sufficient, but not greater than necessary to satisfy the purposes of sentencing set out in 18 U.S.C. § 3553.

## CONCLUSION

Based on the foregoing, Mr. Palmer respectfully requests that this Honorable Court vary downward from the proposed advisory Guidelines range based on the reasons set forth above and that it, likewise, consider the unique facts and circumstances of this case and impose a sentence significantly below the adjusted advisory Guidelines range.

Respectfully Submitted,

*s/ Bjorn E. Brunvand*
BJORN E. BRUNVAND, ESQ.
BRUNVAND WISE, P.A.
615 Turner Street
Clearwater, FL 33756
Telephone:  727-446-7505
Facsimile:  727-446-8147
E-Mail: bjorn@acquitter.com
Florida Bar # 0831077
Counsel for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 13, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ Bjorn E. Brunvand*
BJORN E. BRUNVAND, ESQ.
BRUNVAND WISE, P.A.
615 Turner Street
Clearwater, FL 33756
Telephone: 727-446-7505
Facsimile: 727-446-8147
E-Mail: bjorn@acquitter.com
Florida Bar # 0831077
Counsel for Defendant