```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA


  UNITED STATES OF AMERICA,       .
                                  .
            Plaintiff,            .  CR No. 21-0328 (TSC)
                                  .
      v.                          .
                                  .
  ROBERT SCOTT PALMER,            .  Washington, D.C.
                                  .  Monday, October 4, 2021
            Defendant.           .  11:30 a.m.
  . . . . . . . . . . . . . . .   .
```

```
                    TRANSCRIPT OF PLEA HEARING
            BEFORE THE HONORABLE TANYA S. CHUTKAN
                  UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

```
For the Government:          KIMBERLEY C. NIELSEN, AUSA
                             U.S. Attorney's Office
                             601 D Street NW
                             Washington, DC 20530
                             (202) 252-7566


For Defendant:               BJORN E. BRUNVAND, ESQ.
                             Bjorn Brunvand, P.A.
                             615 Turner Street
                             Clearwater, FL 33756
                             (727) 446-7505


Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue NW
                             Washington, DC 20001
                             (202) 354-3186
```

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

1          P R O C E E D I N G S

2          THE DEPUTY CLERK:  Your Honor, we have criminal action

3   21-328, United States of America versus Robert Palmer.  We have

4   Ms. Kimberley Nielsen representing the government and Mr. Bjorn

5   Bjorn Brunvand representing Mr. Palmer, and all parties are in

6   person in the courtroom.

7          THE COURT:  All right.  My law clerk did not get a

8   chance to actually post my order regarding COVID protocols until

9   this morning, but have you all had a chance that to see it?  I

10  think we're all in compliance.  I would just ask that you keep

11  your masks on.  When you need to speak, you can speak from the

12  microphone from where you are, or you can approach a podium,

13  either one, whatever you feel comfortable doing.

14      Good morning, Mr. Palmer.

15          THE DEFENDANT:  Good morning, Judge.  How are you?

16          THE COURT:  All right.  I understand that Mr. Palmer

17  wishes to change his plea of not guilty to a plea of guilty.

18  Mr. Brunvand, is that correct?

19          MR. BRUNVAND:  That's correct.

20          THE COURT:  Okay.  Mr. Palmer, have you ever pleaded

21  guilty in any court before?

22          THE DEFENDANT:  Yes.

23          THE COURT:  I don't know what that procedure was like

24  -- you can remain seated and speak into the microphone, because

25  my court reporter's actually transcribing the proceedings; he's

just not here. He's doing it remotely. He didn't realize we were sitting in court today, and so he needs to be able to transcribe what you're saying. So you need to speak audibly into the microphone and give audible answers. If you shake your head or nod your head, the court reporter cannot transcribe it.

So I have a number of questions that I'm going to have to ask you in order to determine whether to accept your plea, and so my questions may be different from the ones you've heard before. We're going to begin by -- I'm going to begin by asking my courtroom deputy, Mr. Bradley, to administer the oath to Mr. Palmer.

THE DEPUTY CLERK: Mr. Palmer, please stand and raise your right hand.

(The defendant is sworn.)

THE COURT: All right. Now you are now under oath, and I'm going to ask you certain questions to ensure that -- three things: that you're competent to plead guilty, that you understand your rights to a trial and the rights you're giving up by pleading guilty, and that your plea is voluntary and knowing.

So the first thing I have to caution you on is, do you understand that if you do not answer my questions truthfully, you could be prosecuted for perjury or for making a false statement, and that any false answers you give here could be used against you in that prosecution?

1        THE DEFENDANT:  Yes, ma'am.  I do.

2        THE COURT:  Okay.  The purpose of this hearing today

3    is for you to make a decision: whether you want to go to trial

4    on the government's charges against you or whether you want to

5    enter a plea of guilty.

6        In order to make such an important decision, it is

7    important that you understand everything that's going on here

8    today, and that's what I'll be explaining to you.  If I ask you

9    a question or say something that you do not understand, you need

10   to let me know.  I do not want you to guess at what the right

11   answer is.  I don't want you to go along with something you

12   don't understand.  If you don't understand or didn't hear the

13   question, I'll repeat it, try and explain it, or allow you to

14   speak to your lawyer.

15       We're not going to rush through this.  This is an important

16   decision you're making today.  So, at any time, if you're not

17   sure of the question, just say, "I don't understand the question,"

18   and we'll deal with it.

19       So the first phase of this proceeding will be for me to

20   make sure that you're competent -- that is of sound mind --

21   to enter the plea, the second phase is a series of questions

22   designed to make sure that you understand the rights you're

23   giving up, and the final phase is to make sure your plea is

24   voluntary, for me to determine that it's made of your own free

25   will.  What is your full name?

1          THE DEFENDANT:  Robert Scott Palmer.

2          THE COURT:  How old are you, Mr. Palmer?

3          THE DEFENDANT:  Fifty-four.

4          THE COURT:  How far did you go in school?

5          THE DEFENDANT:  Tenth grade.  Well, actually, I have

6    my GED, ma'am.

7          THE COURT:  I ask this of every defendant that comes

8    before me, simply because their are so many papers to sign, but

9    can you read and write?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Now, I'm not going to ask you where you

12   were born, but it is important to know that if you were not a

13   U.S. citizen, there are certain things that could result in

14   your pleading guilty here today.  One is, if you're not a U.S.

15   citizen, you may be deported, and that deportation would occur

16   following any completion of any prison sentence in this case.

17       If you're not a U.S. citizen, your conviction may prevent

18   you from becoming a citizen in the future, it may result in the

19   loss of permanent residency, or it may prevent you from becoming

20   a permanent resident and may result in your being excluded from

21   the United States in the future.  Do you understand that?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Have you taken any alcohol or any drugs in

24   the last 48 hours or any medicine that could affect your ability

25   to understand what you're doing by pleading guilty?

```
1              THE DEFENDANT:  No, ma'am.

2              THE COURT:  Have you received any treatment recently

3     for any type of mental illness or emotional disturbance or

4     addiction to narcotic drugs of any kind?  If you go to regular

5     therapy, you don't need to tell me about that.  I'm talking

6     about any kind of treatment that might, for example, have you

7     taking medication.

8              THE DEFENDANT:  No, ma'am.

9              THE COURT:  Or treatment for mental illness that has

10    you groggy or hearing voices, something like that, that would

11    affect your competency.  Anything like that?

12             THE DEFENDANT:  No, ma'am.

13             THE COURT:  Okay.  Are you completely satisfied with

14    the services of your lawyer, Mr. Brunvand, in this case?

15             THE DEFENDANT:  Very much so.

16             THE COURT:  And have you had enough time to talk with

17    him about the government's plea offer and whether or not you

18    should accept it?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  Have you received a copy of the criminal

21    indictment that is pending against you?  Those are the written

22    charges against you in this case.

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Have you reviewed and read the charges and

25    fully discussed them and the case in general with Mr. Brunvand?
```

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  All right.

3      Ms. Nielsen and Mr. Brunvand, do either of you have any

4  questions as to Mr. Palmer's competence to plead at this time?

5          MS. NIELSEN:  No, Your Honor.

6          THE COURT:  Mr. Brunvand?

7          MR. BRUNVAND:  No, Your Honor.  Thank you.

8          THE COURT:  All right.  Based upon the answers that

9  have been provided here in open court and the representations

10 of counsel, I do find that Mr. Palmer is fully competent and

11 capable of entering an informed plea.

12     Now, Mr. Palmer, in this next phase, I'm going to explain

13 to you the rights that you have in this matter and to find out

14 whether you understand them and to find out whether you intend

15 to waive them.

16     Again, please listen carefully to my questions, and if

17 there's anything you don't understand, please say so.  Some of

18 these questions are complicated.  I assume your lawyer has gone

19 over them with you, but my questions may be more detailed than

20 most.  So listen carefully, and if you don't understand

21 something, let me know.

22     You've been indicted by a grand jury on one count of Civil

23 Disorder; one count of Assaulting, Resisting, or Impeding

24 Certain Officers Using a Dangerous Weapon; one count of

25 Assaulting, Resisting, or Impeding Certain Officers Using a

1    Dangerous Weapon Inflicting Bodily Injury; one count of Entering

2    and Remaining in a Restricted Building or Grounds with a Deadly

3    or Dangerous Weapon; one count of Disorderly and Disruptive

4    Conduct in a Restricted Building or Grounds with a Deadly or

5    Dangerous Weapon; one count of Engaging in Physical Violence

6    in a Restricted Building or Grounds with a Deadly or Dangerous

7    Weapon; one count of Disorderly Conduct in a Capitol Building;

8    and one count of an Act of Physical Violence in the Capitol

9    Grounds or Building.

10          You have a right to plead not guilty and to have a jury

11   trial in this case.  That means that 12 citizens of the District

12   of Columbia would sit over there in that jury box and determine

13   your guilt or innocence based on evidence presented in the

14   courtroom.  Do you understand your right to a jury trial?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  If you had a trial, you would have a

17   right to be represented by your lawyer at that trial and at

18   every other stage at the proceeding and, if necessary, have the

19   Court appoint counsel for you if you could not afford a lawyer.

20          Do you understand that?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  If you had a trial, you would have a

23   right, through your lawyer, to confront and cross-examine any

24   witnesses against you.  Do you understand that?

25             THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  And if you had a trial, you would have

2     the right, if you wished, to present your own witnesses and

3     the right to subpoena them to require them to testify in your

4     defense.  You'd also have the right to testify and to present

5     evidence on your behalf if you wanted to.

6          Do you understand that?

7              THE DEFENDANT:  Yes, ma'am, I do.

8              THE COURT:  Now, you would not have to.  You are not

9     required to testify or present any evidence at trial if you

10    didn't want to because it is the government's burden, their job,

11    to prove you guilty beyond a reasonable doubt.  It's not your

12    job to prove yourself innocent.  So you couldn't be forced to

13    incriminate yourself or to present evidence of your own guilt,

14    and your decision not to testify or to present any evidence, if

15    that's what you decided, could not be used against you.

16         Do you understand that?

17             THE DEFENDANT:  Yes, ma'am, I do.

18             THE COURT:  And, now, unless and until I accept your

19    guilty plea, you are presumed by the law to be innocent because,

20    as I said, it's of the government's job to prove you guilty

21    beyond a reasonable doubt, and until it does, you cannot be

22    convicted.  Do you understand that?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Now, if you went to trial and you were

25    convicted, you would have a right to appeal your conviction to

1    the court of appeals and to have a lawyer help you prepare your

2    appeal.  Do you understand?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  And with the exception of four things that

5    I'm going to go over with you, by pleading guilty you're giving

6    up your right to plead not guilty in this case.

7        Do you understand?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  And under the plea agreement, you're

10   also giving up the right to appeal the sentence that I set.

11   Do you understand that?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  And by "sentence," I don't just mean a

14   term of imprisonment; I mean also a fine, forfeiture, award of

15   restitution, or a term of supervised release.  All those things

16   are encompassed in the term "sentence."  Do you understand that?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  Now, I mentioned shortly a few seconds ago

19   that there are four exceptions to your rights to appeal, and I'm

20   going to go over those four exceptions with you.

21       The first is you have a right to appeal the sentence that

22   I impose if I give you a sentence that is greater than the

23   statutory maximum or the guidelines range.  That means, if I

24   give you an illegal sentence, you have a right to appeal that.

25   You don't have the right to appeal the sentence if you don't

1    like it, if it's legal, but you do have a right to appeal the

2    sentence if I exceed the guideline range or give you a sentence

3    above the statutory maximum.

4        For example -- I'm just pulling numbers out of my head

5    here -- if the statutory maximum to which you plead guilty is 20

6    years and I sentence you to 22 years, you could appeal because

7    I've gone above the statutory maximum.  Do you understand that?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  Okay.  That's the first one.

10       Second, you still have the right to appeal the sentence

11   if you claim that you received ineffective assistance from your

12   lawyer.  Do you understand that?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  And that is why I asked you today if

15   you're satisfied with the services of your lawyer.

16       The third:  Under the plea agreement -- this is a little

17   tricky, but I'm sure your lawyer has explained this to you --

18   you are giving up your right to challenge your sentence in what

19   is called a collateral attack.  That is a challenge that you

20   file at the end of your criminal case by a petition for habeas

21   corpus -- you may have heard of that -- or you may file a motion

22   under Rule 50(b).

23       So you're giving up your right to collateral attack of your

24   sentence, but you still have a right to challenge your sentence

25   if there is newly discovered evidence, that is, evidence that

your lawyer and the prosecutor did not know about today or at
the time of your sentencing.  If newly discovered evidence comes
to light after your sentencing, you can file an appeal of your
sentence.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  So, sentence outside the statutory
maximum, ineffective assistance of counsel, newly discovered
evidence.  The fourth is, if I impose a sentence in your case
based on the U.S. Sentencing Guidelines and those guidelines are
later revised, changed, to reflect a lower range, then you have
a right to file a motion with me asking that I change your
sentence to reflect the new lower range.  You understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Now, you can file that motion.
If I deny the motion, you don't have a right to appeal it.
Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  So four exceptions to your
appellate rights that you're waiving:  You still have the right
to appeal any illegal sentence above the statutory maximum or
guideline range; if you claim you received ineffective
assistance of counsel; newly discovered evidence; or a change
in the guidelines range.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  If you plead guilty in this case

1    and I accept your plea, you're giving up all those other

2    rights to trial and to appeal that I explained that you have.

3    Do you understand?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Okay.  Now, by pleading guilty to a

6    felony offense, you may be deprived of valuable civil rights

7    such as the right to vote, the right to hold public office, the

8    right to serve on a jury, and the right to possess a firearm.

9         Do you understand that you may lose those rights?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  And, having discussed your rights, heard

12   me tell you of the rights you have, do you still want to plead

13   guilty in this case and give up your rights to a trial and all

14   the other rights that I've explained to you that you would have

15   if you went to trial?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  Okay.  Now, your lawyer and the prosecutor

18   have given me a document called Statement of Offense that

19   describes what the government -- well, it has a background of

20   the events of the Capitol, and then it has your participation,

21   your individual role, and it describes what the government would

22   have been prepared to prove at trial had your case gone to

23   trial.  Have you read this document and fully discussed it with

24   your lawyer?

25             THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  This is an important document for a number

2     of reasons.  First of all, I've never met you before.  I wasn't

3     at the Capitol on the 6th.  I don't know details of what you

4     did.  So, in determining a sentence for you, I'm going to be

5     referring to this document.  So what is in here has to be, as

6     far as you're aware, true.  You have signed the last page and

7     dated it August 11, 2021, acknowledging that you have read and

8     understand the Statement of Offense.  So let me ask you, is that

9     your signature, and did you sign it?

10          THE DEFENDANT:  Yes, ma'am, I did.

11          THE COURT:  Did you go over the statement with your

12    lawyer and discuss it with him?

13          THE DEFENDANT:  Yes, I did.

14          THE COURT:  And by signing it, do you acknowledge that

15    you've read the description of the criminal conduct and fully

16    understand it?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  And here's where you have to be absolutely

19    certain, Mr. Palmer.  Does the Statement of Offense truly and

20    accurately describe what you did in this case?

21          THE DEFENDANT:  Yes, it does.

22          THE COURT:  On January 6, 2021, did you throw a wooden

23    plank at a U.S. Capitol Police and Metropolitan Police officers

24    who were protecting the Lower West Terrace at the U.S. Capitol?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  And were you at the front line of rioters

2     who confronted officers at the Lower West Terrace entrance?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Did you spray the contents of a fire

5     extinguisher at the officers until it was empty?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  And did you then throw the empty fire

8     extinguisher at the officers?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  And at the time you threw the wooden plank

11    and the fire extinguisher at the officers, did you know that the

12    officers were engaged in the performance of their official duties?

13         THE DEFENDANT:  Yes, ma'am, I did.

14         THE COURT:  Ms. Nielsen, do you wish to rely on the

15    Statement of Offense, or do you want to describe any additional

16    evidence of the charges against Mr. Palmer?

17         MS. NIELSEN:  No, Your Honor.  We'll rely on the

18    Statement of Offense.

19         THE COURT:  All right.

20       Mr. Palmer, do you understand the charges against you?

21         THE DEFENDANT:  Yes, ma'am, I do.

22         THE COURT:  The parties have submitted a written

23    letter outlining the plea agreement.  Before we discuss the

24    actual terms of the agreement, let me ask you, Mr. Brunvand,

25    does the plea agreement reflect the only plea offer that was

1   made to Mr. Palmer in this case?

2          MR. BRUNVAND:  That's correct, Your Honor.

3          THE COURT:  Okay.  And, Mr. Palmer, have you received

4   a copy, or at least gotten a copy, of the plea agreement to look

5   at and reviewed it?

6          THE DEFENDANT:  Yes, ma'am, I have.

7          THE COURT:  Have you read it carefully?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  It's long.

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  It's complicated.  Do you understand it?

12         THE DEFENDANT:  Yes, ma'am, I do.

13         THE COURT:  Okay.  Have you had enough time to talk

14  with Mr. Brunvand about it?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  And by signing it on August 11, 2021,

17  Mr. Palmer, do you acknowledge that you understand and have read

18  and agree to enter into this agreement with the government?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  Okay.  Mr. Brunvand, I'm going to ask

21  you to summarize the salient terms of the plea agreement for

22  the Court.

23      Mr. Palmer, listen to what your lawyer is saying, because

24  I'm going to ask you a little bit about what he says when he's

25  done.

1      MR. BRUNVAND:  Your Honor, the plea agreement calls

2   for my client to plead guilty to Count 3 of the indictment,

3   which basically is a maximum 20-year imprisonment offense.

4   He agrees to pay a special assessment of $100 for a felony

5   conviction.  He agrees to cooperate with any additional

6   investigation.  He agrees to the factual stipulations that are

7   set forth in the Statement of Offense.

8      The government agrees that there would be no additional

9   charges based on the information that the government has

10  available at this time.

11     The government and Mr. Palmer and myself have discussed

12  what we believe the guideline range to be, and it is also clear

13  that while this is the guideline range with an estimated offense

14  level of 23, the Court will make the ultimate decision as to

15  what the guideline range will be and that the fact that we have

16  estimated this particular range does not necessarily mean that

17  the Court will agree with that assessment.

18     My client's criminal history is set forth, and he has zero

19  criminal history points, but he does have some prior convictions

20  going back in the area of 1989 through 1993.  The estimated

21  guideline range is 46 to 57 months.  We will not be making any

22  arguments that the guideline range would be something different

23  than this, although we do reserve the right, and the government

24  agrees that we can certainly argue for a variance, a downward

25  variance.

1    The government is reserving the right to advise the Court
2    of the facts that the government is aware of that are relevant
3    to the Court for purposes of sentencing.  I think I've already
4    mentioned the Court's not bound by the agreement or the
5    sentencing guidelines.
6        There's an understanding that if in fact my client is
7    sentenced to a period of incarceration in the Bureau of Prisons,
8    he will be placed on supervised release when he is done serving
9    his sentence.
10       There is an understanding that the Court is required to
11   detain my client pursuant to 18 U.S.C. 3143(a)(2).  I will say
12   that I had discussions with the government, and they are seeking
13   an order of detention.
14       I do believe that they will agree, however, that I can
15   argue to the Court that the Court can find there is a particular
16   provision where the Court could find, if the Court made a
17   finding by clear and convincing evidence that my client does not
18   pose a danger to anyone in the community, that they could in
19   fact consider allowing him to remain on release.
20       I will tell the Court that in preparation for today's
21   hearing, my client has sold his assets.  He has done everything
22   to prepare for the very likely possibility that the Court could
23   detain him as a result of this plea agreement and as a result of
24   the plea, but we are going to ask the Court to consider allowing
25   him to remain on supervision until sentencing.

1          THE COURT:  And I believe that your client has agreed

2     to pay $2,000 of restitution?

3          MR. BRUNVAND:  That is correct, Your Honor.  In fact,

4     one of the things I was going to ask the Court, I actually have

5     the $2,000 plus the $100 special assessment in my trust account.

6     One of the things I was going to ask the Court today, if the

7     Court would consider entering an order allowing me to pay that

8     prior to sentencing rather than waiting for sentencing.  But

9     either way is fine.

10          THE COURT:  I think I would prefer to wait.

11          MR. BRUNVAND:  That's fine, Your Honor.

12          THE COURT:  I don't think, in fact, I can enter that

13     order until there's a sentence.

14          MR. BRUNVAND:  That's fine.  That's fine.  It will

15     stay in my trust account until sentencing.

16          THE COURT:  Okay.

17          MR. BRUNVAND:  The waivers of the statute of

18     limitation; the trial rights that the Court has set forth in the

19     discussions; the appeal rights that have been discussed with the

20     Court; the collateral attack that's been already discussed by

21     the Court; to appear by videoconferencing, obviously, is a moot

22     point at this point; the self-incriminating information, the

23     fact that the government has agreed that anything that

24     Mr. Palmer has provided to the government pursuant to this

25     agreement and in previous proffer meetings will not be used

against him at sentencing.

I believe that summarizes the agreement with the government, Your Honor.

THE COURT:  All right.  Thank you, Mr. Brunvand.

MR. BRUNVAND:  Yes.

THE COURT:  Mr. Palmer, you heard your lawyer set forth what he believes to be the terms of the agreement. Is that what you understood to be entering into?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And do you have any questions or confusion about the agreement that you'd like to raise at this time?

THE DEFENDANT:  No, ma'am, I don't.

THE COURT:  Okay.  Based on the representations and my review of that document, I accept that this plea agreement is of the type authorized by Federal Rule of Criminal Procedure 11(c)(1)(A) in that it specifies Mr. Palmer will not be further prosecuted criminally by the U.S. Attorney's Office for the District of Columbia for the conduct set forth in the Statement of Offense.

Now, a few questions about sentencing, Mr. Palmer.  Have you and your lawyer talked about sentencing and how the statute and sentencing guidelines may apply to your case?

THE DEFENDANT:  Yes, ma'am, we have.

THE COURT:  And as your lawyer said, your lawyer and

the prosecutor have given you a written estimate in your plea

agreement of what they believe the applicable guideline range

and criminal history categories would be in your case.

Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  But do you understand that that's just an

estimate and I will make the final determination as to those two

things when I sentence you?  Do you understand?

THE DEFENDANT:  Yes, ma'am, I do.

THE COURT:  And I will make that determination after

the presentence report is completed and I've had a chance to

review it.  So, sitting here today, obviously, I cannot tell you

what range I would come up with or what criminal history

category I would decide you fall into.  Do you understand that?

THE DEFENDANT:  Yes, ma'am, I do.

THE COURT:  If I accept your guilty plea in this case,

do you understand that you could receive a maximum sentence of

20 years of imprisonment?

THE DEFENDANT:  Yes, I do.

THE COURT:  And have you and your lawyer discussed

sentencing and how the statute and the sentencing guidelines may

apply to your case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Obviously, as I told you before, I can

never sentence you to more than the statutory maximum of a term

of imprisonment.  You could also be subject to a period, as your
lawyer mentioned, of supervised release following any term of
imprisonment that I impose; and this means that, if you're sent
to prison, then upon your release, you would be under the
supervision of the probation office and be expected to follow
their conditions and rules, and if you violated any of those
conditions, you could be sent back to prison for more time.

Do you understand that?

THE DEFENDANT:  Yes, ma'am, I do.

THE COURT:  By statute, the maximum supervised release
I can impose is three years.  Under the sentencing guidelines,
the supervised release range is one to three years.  And do you
understand that the maximum fine by statute that I could give
you is $250,000?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And you will also have to pay a
special assessment, as your lawyer indicated you're prepared to
do, of $100 to the Clerk of Court for the U.S. District Court.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  As part of your sentence, I could
order you to pay restitution to any victim of your offense for
any damage that was done, and I understand you have agreed to
pay $2,000 in restitution in this case.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I could award a different number, though.

1    Do you understand that?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Now let me talk about the sentencing

4    guidelines.  I am obligated, in every sentencing of a felony,

5    to calculate and consider the applicable sentencing range

6    recommended in the guidelines manual for your offense for a

7    person with your criminal history.

8         Now, it used to be that I had to impose a sentence in

9    accordance with the guidelines manual; I had no choice.  But

10   that has changed.  But even though I have discretion to enter

11   the sentence that I believe is appropriate, I still have to

12   consult and calculate the guidelines in every federal criminal

13   case.  Do you understand?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  And have you and Mr. Brunvand discussed

16   the sentencing guidelines and how they might apply to your case?

17             THE DEFENDANT:  Yes, ma'am, we have.

18             THE COURT:  And again, as I've just mentioned, I won't

19   be able to determine the guideline range until after I've

20   reviewed the presentence report, and the process of that is that

21   the probation office drafts a presentence report, your lawyer

22   and the government and you look at it, and you ask to make any

23   corrections that you think need to be made.

24        Once that process is complete, then I'll look at the

25   final version, and that is when I'll make my own decision as to

1   the appropriate guideline range and criminal history category.

2   Do you understand?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Okay.  Now, as I said, the estimate in the

5   plea agreement of what the guidelines sentence will be is simply

6   an estimate.  You've discussed this estimation with your lawyer?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  And, again, the sentence that I impose may

9   be different from this estimation.  Do you understand that?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And if it is, you understand that you will

12   still be bound by your plea agreement; you won't be allowed to

13   withdraw your plea?

14          THE DEFENDANT:  Yes, ma'am, I do.

15          THE COURT:  And do you understand that, after I've

16   decided what the guidelines range is and what guidelines apply

17   to your case, I'll have the authority, in some limited

18   circumstances, to impose a sentence that is more severe or

19   less severe than the sentence recommended by the guidelines.

20   Do you understand that?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Okay.  And, again, you will not be able to

23   withdraw your plea simply because you're not happy with or don't

24   like or agree with the sentence that I gave you.  Do you understand?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  As long as it's legal.

2      Now, in determining your sentence, I have to consider, as

3  I must in every case, the statutory sentencing factors under 18

4  U.S.C. § 3553(a) that require me to consider a host of factors

5  such as the nature and circumstances of the crime, the kinds of

6  sentences available, guidelines, the need to avoid sentence

7  disparity, the need to provide restitution, and the need for my

8  punishment to reflect the seriousness of the offense, to promote

9  respect for the law and to provide for just punishment, to

10  adequately deter criminal conduct, to protect the public from

11  future crimes you may commit, and to provide you with any needed

12  educational or vocational training, medical care, or other

13  correctional treatment in the most effective manner.

14      I'm going to have to consider all of those factors in

15  determining what sentence to give you.  Do you understand?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Now, under some -- again, some limited

18  circumstances, the government may have a right to appeal my

19  sentence.  Do you understand that?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  And I'm not sure -- I believe your lawyer

22  said you have pleaded guilty some time ago.  Parole has been

23  abolished for federal charges.  So, if I sentence you to prison,

24  you will serve the sentence that I impose, with a possible

25  reduction of good-time credit of up to 54 days a year, and you

1    will not be paroled early as used to be the case.

2        Do you understand that?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  And, again, if the sentence in this case

5    ends up being more severe than you expected, you understand you

6    will still be bound by your plea and will have no right to

7    withdraw it?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  Okay.  Just give me a minute here, please,

10   to check something.

11       Okay.  Now, Ms. Nielsen, it's my understanding that you're

12   requesting that Mr. Palmer be detained pending sentencing?

13           MS. NIELSEN:  I am, Your Honor.

14           THE COURT:  The reason I stopped was just to check the

15   statute provisions.  The plea agreement into which you entered,

16   Mr. Palmer, states that, "Your client acknowledges that, because

17   your client is pleading guilty to an offense described in

18   subparagraph (A), (B), or (C) of 18 U.S.C. § 3142(f)(1), the

19   Court is required to order your client to be detained pending

20   sentencing pursuant to 18 U.S.C. § 3143(a)(2)."

21       So, under the plea agreement, you have agreed that I am

22   required to order detention pending sentencing.  So I'm a little

23   puzzled by your assertion that you could ask me to consider

24   placing him on release pending sentencing.

25           MR. BRUNVAND:  Your Honor, when we signed the plea

1    agreement, and that language is in there, I did speak with the

2    prosecutor about it, and that my reading of the statute would

3    allow -- that is pursuant to 18 U.S.C. 3143(a)(1) -- that there

4    is a provision in there, if the Court finds by clear and

5    convincing evidence that the person is not likely to flee or

6    pose a danger to the safety of any other person or the community

7    if released under § 3142(b) or (c).

8              THE COURT:  That's a variance of what you agreed to

9    in the plea agreement.

10             MR. BRUNVAND:  I think the government will agree that

11   I had that conversation.  We had that --

12             THE COURT:  There was no amended plea agreement

13   filed --

14             MR. BRUNVAND:  That is correct.  That is correct,

15   Your Honor.

16             THE COURT:  I wasn't there, okay?  I play no role in

17   plea negotiations, and I shouldn't.  This is my first appearance

18   with Mr. Palmer, and what I have before me is a signed plea

19   agreement to which you have agreed.  And what it says is that

20   you understand that I'm required to hold him.  If you want to

21   vary from that, I will hear from Ms. Nielsen, but I was given

22   no amended plea agreement.

23             MS. NIELSEN:  Your Honor, there's no amended plea

24   agreement for us to provide.  My understanding from speaking

25   with the assigned prosecutor, Mr. Juman, is that there was a

1    discussion that -- it was our understanding and the defense's

2    understanding that step-back at this time or being detained

3    pending sentencing was mandatory under the statute.

4        I believe Mr. Juman said that you can make whatever

5    argument you want, but it's the agreement and our belief

6    and that you believe that as you're stating in the signed

7    agreement, that it's a mandatory -- it says "the court shall."

8    It's a mandatory step-back at the time.

9            THE COURT:  All right.  Well, the government is not

10   arguing that your argument is a breach of the plea agreement.

11   So I've heard you on the argument.  My understanding is that,

12   because you are pleading guilty to an offense described in

13   subparagraph (A), (B), or (C) of 18 U.S.C. § 3142(f)(1), I am

14   required to order that you be detained pending sentencing

15   pursuant to 18 U.S.C. § 3143(a)(2), and I am going to require

16   that Mr. Palmer be detained pending sentencing.

17       Now I must ask you, Mr. Palmer, a number of questions

18   to ensure that your plea is voluntary:  Has anyone forced,

19   threatened, or coerced you in any way into entering this plea

20   of guilty?

21           THE DEFENDANT:  No.

22           THE COURT:  Has anyone, including your attorney, the

23   police, prosecutor, or any other person you've come in contact

24   with since your arrest, promised or suggested to you that merely

25   because you're pleading guilty I'll give you a lighter sentence?

1              THE DEFENDANT:  No.

2              THE COURT:  Do you understand that the agreement

3     reached in this case resulted from negotiations between your

4     lawyer and the government's lawyer?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Has anyone made any promises to you in

7     connection with your guilty plea other than those contained

8     in the plea agreement or stated in open court here?

9              THE DEFENDANT:  No, ma'am.

10             THE COURT:  Other than what is stated in the plea

11    agreement, has anyone made any promises to you as to what

12    sentence I will impose in this case if I accept your guilty

13    plea?

14             THE DEFENDANT:  No, ma'am.

15             THE COURT:  Are you entering this plea of guilty

16    voluntarily and of your own free will because you are guilty?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  Is there anything that you do not

19    understand about this proceeding or about your plea in this

20    case?

21             THE DEFENDANT:  No, ma'am.

22             THE COURT:  Is there anything you want to ask me or

23    your lawyer at this time before you enter your plea?

24             THE DEFENDANT:  No, ma'am.

25             THE COURT:  Are you now ready to say whether you want

to plead guilty or to go to trial on the charges in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  What do you want to do?

THE DEFENDANT:  Plead guilty.

THE COURT:  I am satisfied that Mr. Palmer is fully competent and capable of making a decision today, that he understands the nature of the charges and the consequences of the plea, that the plea of guilty is knowing and voluntary, that he is acting of his own free will in pleading guilty, and that there is an adequate factual basis containing each of the essential elements of the offense for his plea.

Therefore, I will at this time accept the guilty plea, and Mr. Palmer is now adjudged guilty of Count 3 of the indictment: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a) and (b).

I'll now sign and date the Waiver of Jury Trial form.  Is that your signature on that?  It's a document captioned Waiver of Trial By Jury.  It states, "With the consent of the United States Attorney and the approval of the Court, the defendant waives his right to trial by jury."

Is that your signature, Mr. Palmer?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Now, do you all have a proposed sentencing date?  The probation office will need 70 days at minimum to complete a presentence report.

1          MS. NIELSEN:  Seven-zero, Your Honor?

2          THE COURT:  Yes.  They're, as you can imagine,

3    overwhelmed with these reports.

4          MS. NIELSEN:  I do not have a date, unfortunately.

5    I can email Mr. Juman to see if he has a date.

6          THE COURT:  If you could, please.

7       And Mr. Bradley?

8          THE DEPUTY CLERK:  Your Honor, the 75th day brings us

9    to the 18th, which is a Saturday.  You can do it the 17th, which

10   is a Friday.

11         THE COURT:  I may be in a trial, but we can always

12   break --

13         THE DEPUTY CLERK:  I misstated that.  You are in trial.

14         THE COURT:  If that trial goes.  But we can do it the

15   17th.  Mr. Brunvand, what's your schedule look like?

16         MR. BRUNVAND:  The 17th would be fine.

17         THE COURT:  I can do it the Monday the 20th if you

18   want.  I worry about bumping into the holiday.

19         MR. BRUNVAND:  No, Your Honor.  I'm leaving for Europe

20   the following week.  I was going to possibly go on the 16th to

21   the Ukraine on a federal capital case, but I'll just do the

22   Ukraine after.  It's no problem.  The 17th is fine.

23         MS. NIELSEN:  The 17th is fine with the government.

24         MR. BRUNVAND:  Your Honor, if I may, how much time

25   is allotted for the sentencing?

1          THE COURT:  I don't have a time limit, because so far

2     I haven't been forced to set time limits.  I usually block off

3     an hour, unless it's a particularly complicated case.  I think

4     the one this morning was maybe a little more than an hour?

5     Around an hour.  Although, if I am in trial, I'll probably be

6     a little more tightly controlled of that time, but at least an

7     hour.  And given that I may be in trial, is it a problem to set

8     it for noon?  I can take a break and send the jurors to lunch if

9     I'm in trial.

10          MR. BRUNVAND:  That's fine, Your Honor.

11          MS. NIELSEN:  That's fine, Your Honor.  Thank you.

12          THE COURT:  December 17 at noon.

13     I'm sorry?  (Conferring with deputy.)  Oh, that's right.

14     We're confined by the jail's time.  It has to be 12:30.

15          MR. BRUNVAND:  12:30?

16          THE COURT:  Yes.

17     Now, Mr. Palmer, you've heard me mention a presentence

18     investigation report.  That's a very important document because

19     I don't know anything about you, and the presentence report will

20     give me a lot of information about you.  And I sentence

21     individuals; I don't sentence crimes.  And so I will be

22     reviewing that document carefully to learn as much as I can

23     about your background, and so you will be asked for information

24     for the report.  Your attorney can be present at that time

25     you're interviewed for that report.

1        You can certainly refer the presentence report writer to

2   family members or people who know you and can give them any

3   background information about you.  As I said, once a draft

4   report is completed, you and your lawyer and the prosecutor will

5   have a chance to look at it, ask that any corrections be made.

6   Once that process is complete, I will look at it.

7        At the sentencing, the prosecutor will have a chance to

8   speak on behalf of the government.  Your lawyer will have an

9   opportunity to speak on behalf of you.  And I don't know if the

10  government is going to have any witnesses at the hearing, I

11  doubt it, but you will also have an opportunity to speak at the

12  hearing.

13       You don't have to speak if you don't want to.  If you

14  decide that you don't want to speak, I'm not going to hold it

15  against you.  However, if you decide that you do want to speak,

16  I will be listening very carefully to what you have to say.

17  But that is up to you.

18       If people want to write letters on your behalf, or if you

19  want to submit any documentation, any certificates or anything

20  on your behalf, they need to get to your lawyer so that the

21  lawyer can get it to me a week before sentencing.

22       I require sentencing memoranda a week before sentencing.

23  That is because I review my sentencing materials very

24  thoroughly.  I take them home with me.  I look them over at the

25  weekend.  I go over them more than once because, again, I take

1    this seriously, and I want to make sure I'm as fully prepared as

2    I can when sentencing comes around.  So that's what will happen

3    at the sentencing.

4        As I discussed earlier, because you are pleading guilty to

5    an offense described in subparagraph (A), (B), or (C) of 18

6    U.S.C. § 3142(f)(1), I am required to order that you be detained

7    pending sentencing pursuant to 18 U.S.C. § 3143(a)(2).

8        All right.  Is there anything further that I need to

9    address at this time, Ms. Nielsen?

10              MS. NIELSEN:  Nothing from the government, Your Honor.

11   Thank you.

12              THE COURT:  Mr. Brunvand?

13              MR. BRUNVAND:  Your Honor, the only thing I would ask

14   is that my client does have some paperwork that he's taking with

15   him into custody.  It includes a short list of current

16   medications that he's taking.  I'd just ask to make sure the

17   Marshals Service alerts the jail of the medications so he can

18   continue to be --

19              THE COURT:  Is that a problem, gentlemen?

20       (Consulting marshals.)

21       Thank you.  And if there are problems in that regard, you

22   should notify chambers.

23              MR. BRUNVAND:  Thank you, Your Honor.

24              THE COURT:  All right.  Thank you, everyone.  I will

25   see you on December 17.

1          MR. BRUNVAND:  Thank you.  Have a good day.

2          THE COURT:  Thank you.  You too.

3          THE DEPUTY CLERK:  This honorable court stands in

4     recess until return of court.  Have a good day, everyone.

5        (Proceedings adjourned at 12:14 p.m.)

```
*   *   *   *   *   *
```

CERTIFICATE

         I, BRYAN A. WAYNE, Official Court Reporter, certify
that the foregoing pages are a correct transcript from the
record of proceedings in the above-entitled matter.




                         */s/ Bryan A. Wayne*
                         Bryan A. Wayne