**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-328 (TSC)** |
| **ROBERT SCOTT PALMER,** | |
| **Defendant.** | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION**
**FOR A REDUCTION IN SENTENCE OR FOR COMPASSIONATE RELEASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Robert Scott Palmer's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 42). The defendant has failed to meet the criteria for this request. The Court should deny the Motion.

**BACKGROUND**

**A.  The Instant Offense**

The facts here are detailed in the Statement of Offense filed in connection with the October 4, 2021, Change of Plea Hearing (ECF 23), the PSR (ECF 28), and the government's memorandum in aid of sentencing (ECF 30). In brief, the defendant was a violent participant in the attack on the U.S. Capitol on January 6, 2021. The defendant joined the mob attempting to forcibly breach the U.S. Capitol building at an arched entrance ("Archway") on the Lower West Terrace ("LWT") to a passageway ("Tunnel") leading to the interior of the building, which police officers defended for more than two hours that day. After watching other rioters repeatedly assaulting the officers in the Tunnel, defendant chose to join in. He made his way to the front line of rioters and attacked the police, first by throwing a wooden plank at them, then by spraying the contents of a fire extinguisher at them, and then by twice hurling the empty fire extinguisher at the officers. Palmer

retreated after he was pepper-sprayed by the officers, but he was still not finished. A few minutes later, on the West Plaza, Palmer threw a 4-5 foot pole at a different group of officers, one of whom fired a non-lethal projectile at Palmer. Though Palmer pleaded guilty to one charge of assault, after his guilty plea, but before his sentencing, Palmer posted a public statement on his fundraising website falsely claiming that his actions on January 6 were purely defensive, and falsely claiming that his assaults on law enforcement were a reaction to—rather than the cause of—him being pepper-sprayed and shot with a non-lethal projectile.

### B.  **Procedural History**

On April 28, 2021, a federal grand jury indicted Palmer and charged him with seven counts, including Count Three: a violation of 18 U.S.C. § 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using A Dangerous Weapon). On October 4, 2021, Palmer pleaded guilty pursuant to a plea agreement to Count Three and was remanded into custody (ECF 33).

On January 12, 2021, after submissions and argument by both parties, this Court sentenced Palmer to 63 months of incarceration, followed by 3 years of supervised release.

On January 29, 2024, Palmer filed the instant motion for Compassionate Release. Palmer seeks release from custody. The defendant has been incarcerated for about 27 months, with a projected release date of March 23, 2026.

### ARGUMENT

### I.     **Applicable Law**

Before the enactment of the First Step Act in 2018, only the Bureau of Prisons could seek compassionate release for a defendant. *See United States v. Long*, 997 F.3d 342, 348 (D.C. Cir. 2021). With the passage of the First Step Act, however, defendants now may file for compassionate release on their own behalf. *See id.* As amended by the First Step Act, § 3582(c)(1)(A) now states:

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i)     extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

As the movant, Palmer bears the burden to establish that early release is warranted. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). To do so, Palmer must show (a) that he has exhausted his right to appeal the BOP's failure to seek compassionate release on his behalf or that 30 days have lapsed since he sought a reduction in sentence from the warden of his BOP facility; (b) the existence of extraordinary and compelling circumstances sufficient to warrant his early release; and (c) that weighing the applicable § 3553(a) factors counsel in favor of early release.

In *Long*, the D.C. Circuit held that the policy statement set forth at U.S.S.G. § 1B1.13 "is not applicable to compassionate release motions filed by defendants." 997 F.3d at 347. The Court of Appeals later held, however, that although Section 1B1.13 is not binding in connection with motions filed by defendants, courts may consider it "persuasive authority." *United States v. Jenkins*, 50 F.4th 1185, 1195 (D.C. Cir. 2022).

That section sets out several categories of circumstances that are "extraordinary and compelling," including serious medical conditions, U.S.S.G. § 1B1.13(b)(1)-(2), family circumstances arising from the incapacitation of the defendant's child's caregiver, spouse, or parent, or another similarly situated individual, where the defendant could be the only available caregiver, *id.* § 1B1.13(b)(3), and the defendant's having sustained sexual or physical abuse while in custody, *id.* § 1B1.13(b)(4). The section also provides that circumstances of similar gravity as those enumerated may be extraordinary and compelling. *Id.* § 1B1.13(b)(4).

### A.  Palmer Has Exhausted His Administrative Remedies

As noted above, 18 U.S.C. § 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed unless it does so "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 § 3582(c)(1)(A). Thus, a "court may consider a defendant's [compassionate-release] motion only after the defendant has" exhausted those remedies. *United States v. Morales*, No. 06-CR-248-4 (JDB), 2021 WL 4622461, at *2 (D.D.C. Oct. 7, 2021).   The purpose of the rule is for the BOP, in the first instance, to evaluate the evidence and arguments of the defendant. *See United States v. Jenkins*, 2020 WL 1872568, at *1 (D.Neb. Apr. 14, 2020) (Court should not consider motion "based on evidence or arguments that weren't presented to the Bureau of Prisons first"). The exhaustion requirement is a mandatory claim-processing rule that is not subject to equitable exceptions and must be applied when the government invokes it. *See Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1848 (2019); *Eberhart v. United States*, 546 U.S. 12, 16 (2005).

Palmer exhausted his remedies by filing a request with the Warden at FCI Coleman on February 27, 2023, which was denied on March 9, 2023 (ECF 42-3).

**B.    Palmer Has Not Shown Extraordinary and Compelling Reasons Warranting Compassionate Release.**

Palmer claims that the circumstances below are "extraordinary and compelling" such that they warrant his release: his "battery of medical conditions and deteriorating health," his "extraordinary post-sentencing rehabilitation," and his "prison sentence relative to others who have also received sentences for similar conduct." ECF 42, at 3.  None of these assertions warrant his immediate release from prison after serving less than half of his sentence.

**1.    Medical Condition**

Palmer has not shown that his medical condition warrants early release. Section 1B1.13(b)(1)(B) provides that "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or medical condition . . . *that substantially diminishes the ability of the defendant to provide self-care* within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B) (emphasis added).

First, Palmer has not met his burden of demonstrating the nature or extent of his medical condition, because he relies entirely on a report from a "Bioethicist-Legal Nurse Consultant." ECF 42-5. This consultant, Ms. Olsen, does not provide the Court with any qualifications, and from her signature line, appears to be a registered nurse ("RN"), not a doctor. ECF 42-5, at 3. Moreover, Ms. Olsen's "report" is based on "a series of interviews" with Palmer and a "limited number" of unspecified medical records. It is thus clear that Ms. Olsen has never examined Palmer, and her "report" rests on Palmer's self-reporting and whatever curated set of medical records Palmer chose to share with Ms. Olsen. Palmer cannot meet his burden of proving an "extraordinary and

compelling" medical condition without providing the Court with actual medical records or the opinion of a doctor who has physically examined him.

Putting aside its pedigree, the substance of Ms. Olsen's report does not justify early release. The vast majority of Ms. Olsen's report is based on medical conditions that predate (often by decades), Palmer's sentencing, such as childhood trauma and acid reflux. All these conditions were either known to the Court at the time of sentencing or could have been raised at the time of sentencing, and so do not constitute new information warranting a change in the Court's sentence. *See* ECF 28 at ¶¶ 69, 83. Ms. Olsen does not describe the severity of any of these conditions, explain how their severity has changed since his incarceration, or explain how they are preventing him from providing self-care. The only new conditions identified in Ms. Olsen's report are sleep apnea, Type 2 diabetes, and dysphagia. ECF 42-5, at 2. Even if Palmer has been genuinely diagnosed with such conditions by a doctor, Ms. Olsen does not state, much less provide evidence, that these conditions prevent him from providing self-care within his correctional facility. And though Ms. Olsen claims that Palmer requires "specialized treatment," she does not state what that treatment might be, let alone identify a treatment that cannot be treated by BOP's physicians. Nor does Ms. Olsen identify any condition that is not being adequately treated at his facility. Indeed, Ms. Olsen concedes that since his arrest, he has been prescribed various medications by BOP physicians for his various medical conditions, demonstrating that BOP is well-equipped to handle his medical concerns. ECF 42-5, at 1. There is thus no support for Palmer's assertion that his care "cannot be guaranteed by the BOP." ECF 42 at 7.

### 2.      Post-Sentencing Rehabilitation

Palmer argues that he "has taken advantage of every opportunity presented to him while in the Bureau of Prisons to better himself" and lists a number of completed courses and

commendations he has received. ECF 42 at 18. While these efforts at rehabilitation are to Palmer's credit, they are not "extraordinary and compelling" circumstances warranting release. "Prisoners are supposed to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary." *United States v. Logan*, 2021 WL 1221481, at *8 (D. Minn. Apr. 1, 2021); *see also United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023) ("Taking classes while incarcerated is common rather than extraordinary").

### 3.    Sentences of Other Defendants

Palmer argues that his original sentence was disproportionate to that of other January 6 defendants, and that this is an extraordinary and compelling reason to grant him release. ECF 42 at 8. Not so.

First, there was nothing disproportionate about Palmer's sentence. Under his plea agreement, Palmer agreed that, assuming he was entitled to a three-level reduction for acceptance of responsibility, his crime of assaulting officers with a dangerous weapon warranted an offense level of 23, and a Guideline Sentencing Range of 46-57 months. ECF 24. Based on his post-sentencing conduct, Palmer lost his entitlement to the three-level reduction, and so faced a Sentencing Range of 63-78 months. He received a sentence of 63 months, the bottom of the range. Contrary to Palmer's suggestion, he did not lose his acceptance points because he set up a website "asking for donations to pay legal fees." ECF 42 at 17. While Palmer was not the only defendant to set up such a website, he was among the defendants who used such a platform to lie about his conduct and deny responsibility for his attacks on law enforcement. As this Court found at the time of sentencing, "Mr. Palmer's posting of the concededly false statements regarding the facts of his offense indicate that, at least at a time after he pleaded guilty, he was still denying his culpability

in the offense." ECF 39 at 17. It is thus disingenuous for Palmer to now claim that he "was not given the benefit of accepting responsibility." ECF 42 at 16.

Because Palmer, solely as a result of his own conduct, faced a sentencing range of 63-78 months, his comparisons to defendants who faced a different sentencing range are inapt. For example, while it is true that Delvyn Thompson received a 46-month sentence for similar conduct to Palmer's, Thompson did not lose his acceptance points based on post-sentencing misconduct. *See United States v. Thompson*, 21-cr-461 (RCL), Sentencing Transcript at 3. Indeed, had Palmer kept his acceptance points, he would have faced the same sentencing range as Thompson, and a bottom-end sentence for Palmer would have been the same 46-month sentence. Thompson also had significant mitigators, including the fact that he had an Autism Spectrum Disorder and he independently contacted the FBI to identify himself and accepted and entered a plea agreement before ever being charged.  *Id.* at 26, 29.

Likewise, for engaging in similar conduct to Palmer, Nicholas Languerand faced a sentencing range of 46-57 months. *See United States v. Languerand*, 21-cr-353 (JDB), Sentencing Transcript at 5. After a small variance based on his "difficult circumstances," Languerand received a sentence of 44 months. Had Palmer retained his acceptance point reduction the way Languerand did, Palmer would have been facing the same sentencing range as Languerand, and a low-end sentence of 46 months would have been only two months higher than Languerand.

Similarly inapposite are Palmer's comparisons to defendants who were not convicted of assaulting officers, such as Jacob Chansley, Hunter Seefried, and Kevin Seefried, or who assaulted officers but without an enhancement for use of a dangerous weapon, such as Scott Fairlamb, *see* ECF 42 at 10-11. And Palmer's motion makes no effort to account for factors such as youth, family

circumstances, mental health, or drug abuse, which may have led courts to vary downward in individual cases.

Palmer also fails to account for other defendants who received similar or greater sentences. For example, this Court sentenced another January 6 defendant to 63 months of incarceration for assaulting officers with a dangerous weapon even though his sentencing guidelines were *lower*. *United States v. Mark Ponder*, 21-cr-259 (TSC). There, the guidelines range was from 57 to 71 months and the Court imposed the same 63 month sentence as it did in the instant case. *See Ponder* Sentencing Transcript at 8, 35.

In sum, Palmer identifies no defendant who committed the same criminal conduct, who lost acceptance points before sentencing, and who, like Palmer, provided no grounds for downward variance, who received a sentence materially different from his 63-month, low-end sentence. To the contrary, Palmer's sentence is not out of line with sentences imposed on other January 6 defendants convicted of assaulting police officers. *See, e.g.*, *United States v. Webster*, 21 Cr. 208 (APM) (120 months (post-trial conviction)); *United States v. Khater*, 21 Cr. 222 (TFH) (80 months); *United States v. Head*, 21 Cr. 291 (ABJ) (90 months); *United States v. Young*, 21 Cr. 291 (ABJ) (86 months). He has thus shown no disparity that warrants a sentencing reduction, let alone his immediate release from prison.

### C.    The 18 U.S.C. § 3553(a) Factors Weigh Against Release.

Under both 18 U.S.C. § 3582(c)(1)(A) and 18 U.S.C. § 3582(c)(2), the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) in its analysis. *See* 18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(2) (the Court may reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable"). Those factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," and also the need

for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner."

Even where a defendant has established an extraordinary and compelling reason for release, the Court may reduce his sentence only if the balance of the § 3553(a) factors favor release. *See United States v. Edwards*, No. 03-234 (JDP), 2020 WL 5518322, at *4 (D.D.C. September 12, 2020) ("[E]ven if Mr. Edwards *had* presented "extraordinary and compelling reasons" for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release." (emphasis in original)); *see also United States v. Holroyd*, 464 F. Supp. 3d 14, 19 (D.D.C. 2020) (TNM) ("If a defendant still poses a danger to the community or if the balance of factors under § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release."); *United States v. Sears*, 19-cr-21, 2020 WL 3250717, at *2 (D.D.C. June 16, 2020) (denying compassionate release to inmate with diabetes, hypertension, and asthma who had established extraordinary and compelling reasons because "this Court does not, and cannot, find that a reduction in [Defendant]'s term of imprisonment is consistent with the § 3553(a) factors at this time").

The Court assessed the 18 U.S.C. § 3553(a) factors prior to and at the defendant's sentencing and concluded that a 63-month sentence was sufficient, but not greater than necessary, citing in part the seriousness of Palmer's conduct, his use of weapons against police officers, and the need to deter criminal conduct. All the factors the defendant now cites—his age and medical condition, his family circumstances, and the role of "others" in the January 6 riot—were all known

to and considered by the Court at the time of sentencing. *Compare* ECF 42 at 21-23 *with* Defendant's Sentencing Memorandum, ECF 31 at 8-11. There is no new detail or argument to be found. *See United State v. Merisse*, 06-cr-42 (JDB), 2023 WL 6847034, at *7 (D.D.C. Oct. 17, 2023) (the defendant "has not identified any relevant factual or legal change that would allow the Court to reconsider [disparities between his sentence and those of his co-defendants]. As the Sixth Circuit has explained, 'identifying "extraordinary and compelling reasons" is a task that focuses on post-sentencing ... developments.'" (*quoting United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021))).

## **CONCLUSION**

For the reasons above, and based on the entire record, Palmer has not met his burden to show that he is entitled to a sentence reduction. Accordingly, the Court should summarily deny defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:_____/s/_____
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
Email: Robert.juman@usdoj.gov