UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | C/A: 1:21-cr-00328-TSC |
| vs. | ) | |
| | ) | |
| Robert Scott Palmer, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

## I.    Introduction

The Defendant, Mr. Robert Scott Palmer, respectfully submits this reply addressing the Government's Memorandum in Opposition to his Motion for Compassionate Release.

## II.    Arguments

### *Mr. Palmer's Medical Condition*

Regarding Mr. Palmer's medical conditions, the Government dismisses valid evidence of his very serious medical conditions in order to rationalize the non-existence of an extraordinary and compelling reason for compassionate release. Despite the Government's contention, Mr. Palmer has submitted articulable evidence of his deteriorating health in prison and his specialized care that the BOP simply cannot be counted on to provide.

1

First, the Government seems to suggest that Ms. Olson's report regarding Mr. Palmer's medical is disingenuous or insincere and that it holds little weight as Ms. Olson is only a registered nurse and not a physician. ECF No. 44 at 5-6. There is no rule or standard regarding the report submitted by Mr. Palmer that concludes that such evidence used to promote his claim must be conducted by a physician.

In fact, the Supreme Court of the United States has noted that federal judges have wide discretion in considering materials involved in sentencing matters and this discretion runs from initial sentencing to sentencing modification hearings. *Concepcion v. United States*, 597 U.S. 481, 491 (2002). Judges are empowered in "light of the 'federal sentencing framework'…to consider the 'fullest information possible concerning the defendant's life and characteristics.'" *Id*. at 493 (quoting *Pepper v. United States*, 562 U.S. 476, 488-490 (2011)). Regarding evidence presented, "the only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution." *Id*. at 494.

Ms. Olson's report falls within the wide birth of materials that can be considered by this Court in evaluating Mr. Palmer's motion as it neither runs afoul of a statute nor of the Constitution. Ms. Olson presented the facts based on her review of medical records (those she was empowered to access as a private citizen)

and interviews with Mr. Palmer, who is a far better judge of his own health conditions than the Government.

To ease the concerns of the Government of the authenticity of Mr. Palmer's medical conditions, Mr. Palmer submits portions of his BOP medical records which corroborate Ms. Olson's report. Mr. Palmer does in fact suffer from Type 2 Diabetes (p. 007), esophageal issues (p. 009), an enlarged prostate causing urinary tract infections (p. 009), Major Depressive Disorder (p. 009), edema (p. 041), and sleep issues (p. 041). The records also note he suffered a stroke in 2000 (p. 030) and had esophagus and hernia surgery in 2018 (p. 025). All of these reports were made by a BOP physician. The Government also contends that Mr. Palmer's conditions are easily managed by the BOP and do not affect his ability to care for himself. While the Government may posit that the quality of BOP medical care is up to par, in December 2023, a bipartisan effort on the BOP Oversight Committee in the Senate began its push for oversight over the failings of BOP medical care. Meg Anderson, Lawmakers push for federal prions oversight after reports of inadequate medical care, NPR (Dec. 12, 2023, 5:00 AM ET), https://www.npr.org/2023/12/12/1218627629/lawmakers-push-for-federal-prison-oversight-after-reports-of-inadequate-medical. The BOP has been woefully understaffed in all aspects, also subject of a national report, and is

unaccredited by the Joint Commission, which accredits "the vast majority of U.S. hospitals." *Id.*

In sum, Mr. Palmer's health is deteriorating, and the BOP cannot be counted on to provide adequate medical care. Mr. Palmer needs much wider access to specialists to prevent his various conditions from worsening than the BOP can or is willing to provide for him.

*Post-Sentencing Rehabilitation*

Additionally, the Government seems to mischaracterize Mr. Palmer's inclusion of his rehabilitative efforts as an argument that rehabilitation is an extraordinary and compelling reason in itself to warrant compassionate release. This is incorrect.

Mr. Palmer is aware that under U.S.S.G. §1B1.3(d) that rehabilitation, by itself, cannot be considered an extraordinary and compelling reasons for compassionate release. U.S.S.G. §1B1.3(d). However, according to §1B1.3(d), "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* Simple consideration by this Court of the efforts Mr. Palmer has made while imprisoned is the basis for the efforts inclusion in the initial motion.

Several courts have taken into account rehabilitative efforts by defendants, many who have committed much more serious crimes than Mr. Palmer, in granting compassionate release motions. *See United States v. Douglas*, 2021 WL 214563, at *8 (D.D.C. Jan. 21, 2021) (considered Defendant's efforts in BOP programming and taking responsibility for his actions in granting compassionate release despite Defendant's conviction for murder); *United States v. Wright*, 549 F. Supp. 3d 122, 126-127 (D.D.C. 2021) (evaluated Defendant's vocational and educational progress and his voluntary undertaking of such progress as weighing in his favor for release despite Defendant's 230 month sentence and violent criminal history); *United States v. Fennell*, 570 F. Supp.3d 357, 364 (W.D. Va. 2021) (found that defendant's rehabilitation weighed in favor of granting compassionate release including Defendant's clear disciplinary record despite Defendant's conviction for major drug crimes); and *United States v. Hicks*, 2021 WL 1634692, at *10 (D.D.C. Apr. 27, 2021) (found that evidence concerning performance in academic and vocational programs can serve as a basis for an inference of rehabilitation when considered in the realm of compassionate release.).

Despite the Government's blatant dismissiveness of Mr. Palmer's efforts, this Court should consider his willingness to engage in meaningful self-reflection and growth during his time in prison. Mr. Palmer knows he has committed a crime and

has hurt others. His arrest and subsequent imprisonment for his offense have shown him that actions do in fact have consequences, and those consequences can be very serious. Despite the crushing pressure of both prison and knowing that he has hurt not only the victims in the case, but also his own family, Mr. Palmer has *voluntarily* taken part in programs and work opportunities to better himself. (emphasis added). Mr. Palmer has additionally been commended for his work ethic by BOP employees. *See United States v. Douglas*, 2021 WL 2114563, at *8 (D.D.C. Jan. 21, 2021) ("Courts have found letters from prison staff—'written by the unbiased people who have spent more time with [defendant] than anyone else—to be power evidence of […] rehabilitation.'" (quoting *United States v. Rodriguez*, 492 F.Supp.3d 306, 312 (S.D.N.Y. 2020))). While the Government may see these as meeting "baseline expectations", Mr. Palmer could have easily shunned all opportunities including classes and work assignments. ECF No. 44 at 7. Inmates can certainly choose not to participate in programs and classes and improve themselves, but Mr. Palmer has done so, and his efforts should be considered as additional reasons why he should be granted compassionate release.

## *Sentences of Other Defendants*

In trying to downplay the apparent disparities between Mr. Palmer's sentence and those of similarly situated January 6th defendants, the Government provides

examples of cases asserting surface level differences negating Palmer's argument. However, when actually examined, different factors played into the different sentences these defendants received (those of convicted of assault during the riot), that do not apply to Mr. Palmer, and therefore cannot be considered on par with him.

First, the Government claims Mr. Palmer failed to take into account defendants who received similar or greater sentences for assaulting police officers and therefore his sentence was disproportionate. ECF No. 44 at 9. The Government cites the cases of *United States v. Thomas Webster*, Case No. 21-cr-208, *United States v. Albuquerque Cosper Head*, Case No. 21-cr-291, and *United States v. Kyle Young*, Case No. 21-cr-291, as defendants whose punishments are not "out of line with sentences imposed on other January 6 defendants convicted of assaulting police officers." *Id*.

Mark Webster, who was convicted after a jury trial of seven counts, was sentenced to 120 months in prison for several charges to which Mr. Palmer did not plead to in his case. *Webster*, ECF No. 86. Mr. Webster was additionally given several enhancements regarding his offense level calculations including a four-level enhancement for wearing body armor during his assault. *Webster*, ECF No. 124 at 16. Mr. Palmer did not receive any such enhancement nor conviction after a jury trial.

In the cases of Albuquerque Cosper Head and Kyle Young (co-defendants), who received 90 months and 86 months imprisonment respectively, both men had

extensive criminal histories that included assaultive behavior. ECF No. 44 at 9; *Head*, ECF No. 32 at 23; *Young*, ECF 140, at 55-56. Young, along with his long history of drug and property crimes, additionally received several citations while imprisoned for those prior crimes for altercations and assaultive behavior while in prison. *Young*, ECF No. 140 at 55-56. Young also received an enhancement for physically restraining a U.S. Capitol police officer during the riot. *Id*. at 43. Mr. Palmer, on the other hand, received a total criminal history score of zero during guideline calculation with his last criminal conviction occurring in the early 1990s. ECF No. 28 at 16. As the Court noted at sentencing, "[his] early criminal history notwithstanding, he built a business" and moved on to contribute to society in many ways. ECF No. 33 at 21. Mr. Palmer is just simply not comparable to these other defendants as the Government claims.

Second, the Government mischaracterizes the impact of the case, *United States v. Mark Ponder*, Case No. 21-cr-259, which this Court also heard. The Government states, "Palmer also fails to account for other defendants who received similar or greater sentences. For example, this Court sentenced another January 6 defendant (Mr. Ponder) to 63 months incarceration for assaulting officers with a dangerous weapon even though his sentencing guidelines were *lower*." ECF No. 44 at 9. While it is true Mr. Ponder did have a lower guideline range of 57-71 months

than Mr. Palmer at 63 to 78 months, the Government again fails to notice the nuances that arise in Mr. Ponder's case. *Id*. Mr. Ponder had an extensive criminal history dating back to 1982 which included convictions for domestic violence, weapon possession, and notably bank robbery and armed robbery. *Ponder*, ECF No. 58 at 14; 32-33. Mr. Ponder was given a criminal history category of III, where Mr. Palmer received a criminal history category of I.

This Court previously compared Mr. Palmer and Mr. Ponder at Ponder's sentencing hearing noting that Mr. Palmer was older than Mr. Ponder and had pleaded guilty to similar acts of violence against the police, "but those acts of violence did not result in the kind of damage Mr. Ponder's acts did, and I gave him 63 months." *Ponder*, ECF No. 58 at 20. Mr. Ponder assaulted the police so violently that he cracked a police officer's shield and a pole he was using to assault the officers also cracked. *Id*. at 28. The officer assaulted by Mr. Ponder eventually had to retire from his job as a result of Mr. Ponder's actions. *Id*. at 26. In sum, because of Ponder's violent past and the result of his violent actions at the Capitol, he was given a sentence above his guidelines. Mr. Palmer was not given a sentence above his guidelines, but in fact was given the lowest sentence possible within his own guideline range. The Government conveniently leaves out these important facts in their comparison of Mr. Palmer and Mr. Ponder.

The Government additionally emphasizes the incident involving the fundraising post involving Mr. Palmer after he pled guilty in their argument against his disproportionate sentencing. This Court found that Mr. Palmer, and Mr. Palmer admitted to this, put up statements that he knew were false regarding his culpability in the riot. ECF No. 33 at 15-16. Mr. Palmer would like to state again that he knows this was wrong and apologizes for such a lapse in judgement. However, as pointed out in the initial motion, Mr. Palmer again argues that the denial of acceptance of responsibility points has rendered him a disproportionate sentence. As this Court is aware, Mr. Palmer readily accepted both his arrest by law enforcement and a guilty plea from the Government. ECF No. 31 at 2. Mr. Palmer was one of the first defendants to plead guilty in connection with the riot and even after the unfortunate website incident, affirmed to this Court his guilt in both the riot and the website mishap. *Id*.

While Mr. Palmer does agree with the Government that he was not the only defendant to set up a fundraising site for January 6 legal fees, he does take issue with the Government's characterization that he "was among the defendants who used such a platform to lie about his conduct and deny responsibility for his attacks on law enforcement." ECF No. 44 at 7. The Government seems to be suggesting Mr. Palmer is part of a conspiracy to make false statements with other January 6th defendants in

order to deny the merits of his disproportionate sentencing claim, but the Government provides no evidence to back up their claims in regard to other defendants.

Again, Mr. Palmer accepted responsibility for the website and Government Counsel indicated they were satisfied with this acceptance at the time of sentencing. ECF No. 33 at 15-16. It would now be disingenuous on the Government's behalf to try to enlarge the issue to such a degree in their opposition to his motion. This information was known to this Court at the time of sentencing and must be weighed with all the additional evidence and grounds Mr. Palmer puts forth at this point in time.

*18 U.S.C. §3353(a) Factors*

In their argument concerning the examination of the §3353(a) factors as applied to Mr. Palmer, the Government devotes only two lines to argue that the §3353(a) factors weigh against release. The Government simply rehashes (in scant detail) the information presented at sentencing as the backdrop for a denial of compassionate release. This argument is in ignorance of the purpose of compassionate release— which is to examine the individual defendant *at the time of his motion* and extraordinary and compelling reasons that have arisen that may warrant a reduction in sentence. (emphasis added).

When examining the §3353(a) factors, this Court must decide whether the factors weigh in favor of the necessity "to maintain the prior term if imprisonment despite the extraordinary and compelling reasons...in order to achieve the purposes of punishment that compelled the court to impose the original term of imprisonment." *United States v. Johnson*, 464 F. Supp. 3d 22, 30 (D.D.C. 2020). While the Government seems to want this Court  to evaluate these factors in the same manner it did at sentencing, "[this] Court must consider the §3353 factors taking into account the extraordinary and compelling circumstances to release [the Defendant]...which did not exist at the time of sentencing, as well as any other new evidence before the Court at this time to determine whether, after all, a reduction in sentence would be unjustifiably lenient." *Douglas*, 2021 WL 214563 at *11. Additionally, the "compassionate release statute 'requires a *reconsideration* of [the] same set of [§3353(a)] factors when deciding whether or not to modify the original sentence when there are extraordinary and compelling reasons to do so.'" *Id.* (quoting *Johnson*, 464 F. Supp. 3d at 30) (emphasis added). Therefore, this Court must reconsider Mr. Palmer's extraordinary and compelling circumstances and the §3353(a) factors as applied to Mr. Palmer at the time of this motion.

As the Court examines such factors, Mr. Palmer again urges the Court to not only see him as a man who "has endured a difficult childhood" that "he overcame...to his

credit" and "has […] by all accounts, been a good father, a good friend, a good neighbor", but also as a man who is deeply remorseful for his actions and is capable of making change in the face of mistakes. ECF No. 33 at 21. The individual before this Court at sentencing is not the same man who makes this motion, and although the Government seems to wish that he was, that is simply not the case. Mr. Palmer simply asks this Court to reconsider its analysis of the §3353(a) factors in light of the extraordinary and compelling reasons he puts forth in his initial motion.

### III.    Conclusion

In light of the above arguments, Mr. Palmer respectfully asks this Court to modify his term of imprisonment and grant his motion for compassionate release.

**February 26, 2024**

Respectfully submitted,

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best, P.C.
Fed ID #9969
3710 Landmark Drive, Suite 113
Columbia, South Carolina 29204
elizabeth@franklinbestlaw.com
(803) 445-1333

## CERTIFICATE OF SERVICE

Counsel hereby certifies that Mr. Robert Juman of the United States

Attorney's Office was served this Reply by filling via ECF on this date **February**

**26, 2024.**

**/s/ Elizabeth Franklin-Best**